**TRIUMPH HOSIERY MILLS, INC.,**
Plaintiff,

v.

**TRIUMPH INTERNATIONAL CORPORATION and Triumph of Europe, Inc., Defendants.**

United States District Court
S. D. New York.
March 10, 1961.

938

Lipkowitz & Plaut, New York City, for plaintiff. Irving D. Lipkowitz, I. Robert Harris, New York City, of counsel.

Brumbauch, Free, Graves & Donohue, New York City, for defendants. Granville M. Brumbaugh, Richard G. Fuller, Jr., New York City, of counsel.

CASHIN, District Judge.

On July 15, 1960 I denied plaintiff's motion for a preliminary injunction. 187 F.Supp. 169. Plaintiff appealed from the order denying its motion. While the case was pending before the Court of Appeals plaintiff learned of facts which, if they had been presented on the original application, plaintiff thought might have led me to a different conclusion. Application was made to the Court of Appeals for leave to renew the motion for a preliminary injunction and such leave was granted. The facts before me on the prior application, insofar as I thought them relevant, were summarized in my opinion, D.C.1960, 187 F.Supp. 169, and, therefore, will not be reviewed at length herein.

Basically, plaintiff's position on the present motion is that a vital finding in my first opinion, namely, that the defendants are "innocent" junior users of the word "Triumph" in their corporate names, was in error and that that error was induced by misrepresentation and concealment by defendants in their papers in opposition to the original motion.

Defendants, on the other hand, contend that plaintiff has no standing to renew their motion since the facts now presented are not "newly discovered evidence" within the meaning of Rule 60(b)(2) of the Federal Rules of Civil Procedure and, in any event, the facts now presented do not warrant any change in my finding of them as innocent junior users.

I will dispose of defendants' procedural argument first. Even though courts are loath to having outstanding orders or judgments which are erroneous, nevertheless, there must be an end to litigation and so final orders can be reconsidered only on a very strong showing. Rule 60(b) cited by defendants, and the rationale upon which it is based, have no application to the present motion. By its terms, Rule 60(b) applies only to final orders. The order denying a preliminary injunction is clearly interlocutory. The rationale upon which the rule is based is equally inappropriate. The litigation is not in any case at an end. The actual trial on the merits has not yet been held. Even when a trial on the merits has been held and an interlocutory judgment fixing liability has been entered " * * * the court [does] not lack power at any time prior to entry of its final judgment * * * to reconsider any portion of its decision and reopen any part of the case. [citing cases]. It [is] free in its discretion to grant a reargument based either on all the evidence then of record or only the evidence before the court when it rendered its interlocutory decision, or to reopen the case for further evidence." Marconi Wireless Telegraph Company v. United States, 1942, 320 U.S. 1, 47–48, 63 S.Ct. 1393, 1415, 87 L.Ed. 1731. In the exercise of my discretion, I will consider the further evidence presented by plaintiff whether or not it could have been dis-

covered before the first motion in the exercise of due diligence.

The alleged misrepresentation in the defendants' original papers which plaintiff now relies upon is an implicit one as to the length of time defendants' parent and their affiliates have used the word "Triumph" in their trade names. Plaintiff's position is not without support. Thus, in defendants' summarization of the facts in their memorandum in opposition to the original motion, it is stated (pp. 2–3) as follows:

"Triumph Spiesshofer & Braun

"Defendants' parent, Triumph Spiesshofer & Braun is probably the world's largest manufacturer and distributor of girdles, corsets, brassieres and other articles of women's foundation garments. Its business began in 1886 in Germany and has expanded throughout the world. Defendants' Exhibit 1 is a list of 80 countries and territories where the goods of Triumph Spiesshofer & Braun are distributed and sold. Over 12,000 persons are employed by Triumph Spiesshofer & Braun and its many inland German and foreign subsidiaries and affiliates. It has marketing subsidiaries and affiliates, in addition to Defendants, incorporated locally in such countries as the Netherlands, Belgium, England, Italy, France, Sweden, Austria, Denmark, Finland, South Africa, Canada, Lebanon, and Bermuda. This family of marketing subsidiaries, including Defendants here, have the word 'Triumph' in their names in order to establish their common relationship to Triumph Spiesshofer & Braun and thereby partake of, as well as add to, their parent's goodwill in the trade and with the public.

"Since 1948, the total sales, at wholesale prices, of girdles, corsets, brassieres, etc. by Triumph Spiesshofer & Braun and its subsidiaries have exceeded one billion Deutsch Marks (over $250,000,000). Triumph Spiesshofer & Braun has spent over $10,000,000 since 1948 in advertising and promoting the sales of its goods all over the world.

"Expansion to United States

"In about 1955, Triumph Spiesshofer & Braun began to make plans to enter the American and Canadian markets. At that time, very small quantities of its foundation garments were being imported and sold in this country by an independent company. In early 1959, its plans were laid and Defendant Triumph International Corporation was incorporated on May 20th."

In fact, defendants' parent's name did not include the word "Triumph" until at the earliest March 26, 1960, by defendants' version, and not until September 17, 1960 by plaintiff's version. Perhaps, as defendants now claim, the continual use of the recently acquired name of defendants' parent throughout the papers was "simply in accordance with the usual and common practice of describing a business, entity and its activities, past and present, by its current name or trade style." (Defendants' memorandum on the present motion p. 15.) I prescind from drawing any inference to the contrary. However, I did believe, at the time the original motion was decided, that the use of "Triumph" as a part of defendants' parent's name and of its affiliated companies' names was of very long standing and not of recent vintage. Contrariwise, it is now revealed by defendants that the earliest date when "Triumph" was used as part of a corporate name of any of defendants' affiliates was April 18, 1954 (one company). Four adopted the word "Triumph" in their names in 1955; one in 1956; three in 1957; seven in 1959; and six (not including the parent) in 1960.

At this point it is useful to review some facts presented on the original application. Those facts are that in 1955 defendants' parent contemplated entering the American market and soon thereafter

attempted to obtain the plaintiff's consent to the use of the trademark "Triumph". At this time, therefore, only five of defendants' affiliates had adopted the name "Triumph" and seventeen or more had not. In view of these facts it is difficult for me to maintain my view of the defendants as "innocent".

Plaintiff argues further, however, that defendants concealed from it and the court the fact that on June 25, 1956 an application by defendants' parent for registration of the trademark "Triumph" was refused, the examiner citing plaintiff's registration and an appeal therefrom dismissed for lack of prosecution on January 24, 1957. Defendants seek to avoid any unfavorable inference from their admitted non-disclosure on the ground that the Assistant Commissioner of Patents for Trademarks decided two cases subsequent to the rejection of their parent's application which would constrain an examiner to allow registration if a new application were made. Plaintiff rebuts by citing two still later decisions by the Court of Customs and Patent Appeals. This detailed argument, pro and con, however, is, in my opinion, irrelevant. Part of the basis for my original finding of "innocence" upon the part of defendants was reliance upon advice of counsel that "plaintiff's rights in the trademark 'Triumph' were limited and restricted to the hosiery field." 187 F.Supp. 169, 173. The advice given by counsel, the reliance upon which I based a finding of innocence, was given no later than November 26, 1957. The decisions of the Assistant Patent Commissioner purportedly relied upon were Venus Foundation Garments, Inc. v. Chapman & Sons, 116 U.S.P.Q. 453, decided in 1958 and Ex parte Poirette Corsets Inc., 115 U.S.P.Q. 356, decided December 3, 1957. Obviously, neither of these cases could have been relied upon in November of 1957 since they had not yet been decided. True, the corporate names were not adopted until 1959. However, defendants' own papers indicate that the decision that defendants could eventually adopt the name was made in November of 1957.

Plaintiff raises an additional argument that defendants' parent practices unfair competition in Germany by registering well-known American trademarks with a view towards excluding American competition and, in fact, has caused plaintiff to desist from using the mark "Triumph" on its products in Germany. Defendants generally deny the facts alleged by plaintiff and claim that their business practices are warranted by German law. The facts on this issue, including the fact of German law, are not set out in the affidavits with sufficient definiteness for me to make my findings thereon.

In view of the fact that the adoption of the word "Triumph" as part of the trade names of defendants' parent and their affiliates is of recent origin, I find, on the evidence before me, that defendants do not have a legitimate interest in the use in the United States of corporate names including the word "Triumph". I further find that defendants' decision to adopt names using the word "Triumph" in the face of the rejection of that word as a trademark because of plaintiff's prior registration, strips them of the cloak of innocence.

In my original opinion I refrained from making any finding concerning likelihood of confusion because, on the facts then before me, likelihood of confusion was irrelevant. Since I now determine that defendants are not innocent junior users, such a finding becomes relevant. While very little evidence of actual confusion by consumers or in the trade has been offered, such evidence is not necessary. There is presented a situation where the same word is used to identify closely related goods likely to be sold in the same specialized retail outlets or in the same department of large retail outlets. Under such circumstances a finding of likelihood of confusion is virtually compelled despite little or no evidence of actual confusion. Avon Shoe Co. v. David Crystal, Inc., 2 Cir., 1960, 279 F.2d 607, 612.

█ Accordingly, an injunction should issue.

I am cognizant of the circumstance that this decision is based merely on affi-

davits and that a full scale trial might lead to a different result. The injunction to issue, therefore, will restrain defendants from utilizing the word "Triumph" in any advertising matter or in association with any merchandise purveyed. However, defendants will not be ordered to change their corporate names.

The above, including my previous opinion (1960, 187 F.Supp. 169), shall constitute my findings of fact.

Plaintiff will post an undertaking in the amount of $10,000.