**Lena Holloway WATSON et al.,**
**Plaintiffs-Appellants,**

v.

**COMMISSIONERS COURT OF**
**HARRISON COUNTY et al.,**
**Defendants-Appellees.**

**No. 79–1116.**

United States Court of Appeals,
Fifth Circuit.

April 11, 1980.

Larry R. Daves, Tyler, Tex., for plaintiffs-appellants.

Ernest F. Smith, Marshall, Tex., Philip Brin, Longview, Tex., for defendants-appellees.

Before WISDOM, FAY and TATE, Circuit Judges.

PER CURIAM:

This is a reapportionment case. The plaintiffs charge that malapportionment of Harrison County, Texas, has resulted in dilution of the blacks' voting strength in that county. The trial judge ordered that no reapportionment be undertaken until after

the 1980 census. We reverse his decision and remand the case for prompt reapportionment.

On May 2, 1975, the Harrison County Commissioners Court[1] adopted a reapportionment plan for Harrison County Commissioners Court precincts, replacing a plan adopted September 18, 1965. On June 15, 1975, several black plaintiffs filed a class action against the Commissioners Court and County Judge Don Stokes, the Court's presiding officer,[2] alleging voting dilution in violation of the Fourteenth Amendment, the Fifteenth Amendment, and 42 U.S.C. § 1983.[3] The Commissioners Court denied that any dilution existed. Judge Stokes, however, answered that he had voted against the 1975 plan because it "split Census Bureau Enumeration Districts and no alternative measures were followed to ascertain or count the number of people affected thereby. . . . [T]he proponents thereof could not, and cannot now, demonstrate with any degree of accuracy the number of persons residing in each realigned Commissioners Precinct in Harrison County".

On November 3 the plaintiffs submitted a first amended complaint, setting forth the same causes of action. On December 3 they submitted a second amended complaint, alleging jurisdiction under the Voting Rights Act, 42 U.S.C. § 1973 *et seq.*, and asking that the defendants submit their apportionment plan to the Justice Department for approval in accordance with that Act.[4]

On November 4, 1977, after counsel for both sides were informed that the Justice Department objected to the 1975 plan, the plaintiffs asked for a three-judge court. Upon receipt of an official letter from the Department of Justice objecting to the 1975

plan, the plaintiffs filed a third amended complaint, again asking for a three-judge court.

On November 13 the trial judge held that it would be useless to try the case "when so many facts are unknown and these facts will be established by the 1980 census". He therefore ordered:

> Within 180 days after receipt by the Harrison County Commissioners Court of the official results of the 1980 Population Census certified to by the Bureau of the Census of the United States Department of Commerce, the Commissioners Court of Harrison County, Texas, will, in accordance with Article 2339, of the Revised Civil Statutes of Texas, Article V, Section 18, of the Constitution of the State of Texas, and all other applicable laws (Legislative and Judicial) then in force, officially conduct public hearings, make determinations and adopt any changes required by such applicable laws in Harrison County Commissioners Precinct Boundary Lines existing as of the date of this Judgment, after which, such proposed changes shall be presented to the Court, but shall not be implemented until approved by said Court.

The effect of the order is to allow the May 3 election to be held under the 1965 plan—with Commissioners holding office for four years.

Watson appeals, arguing that a three-judge court should have been appointed and that the trial court erred in staying proceedings until after the 1980 census is completed.

I.

The Supreme Court has held that private citizens may bring actions to enforce § 5 of the Voting Rights Act, 42

---

1. The Commissioners Court is the county governing body in Texas. *See* Tex.Stat.Ann. tit. 44, art. 2351–2372x.

2. Judge Stokes was later dismissed as a separate defendant.

3. The complaint alleged that no black had ever served as a County Commissioner even though

blacks comprise more than 37 percent of the population.

4. Texas became subject to the Act under amendments adopted August 6, 1975. *See* Voting Rights Act of 1965—Extension, Pub.L.No. 94–73, 89 Stat. 400 (1975). The Act is retroactive to November 1, 1972. *See id.* § 202, (codified in 42 U.S.C. § 1973b).

U.S.C. § 1973c. *Allen v. State Bd. of Elections*, 1969, 393 U.S. 544, 557, 89 S.Ct. 817, 827, 22 L.Ed.2d 1, 12. Disputes involving that provision are to be resolved by a district court of three judges. 393 U.S. at 563, 89 S.Ct. at 830. A three-judge court is unnecessary, however, in an adversary action invoking the equity jurisdiction of a district court to order a plan of reapportionment. *See Zimmer v. McKeithen*, 5 Cir. 1972, 467 F.2d 1381, 1383; *Kirksey v. Board of Supervisors of Hinds County*, 5 Cir. 1976, 528 F.2d 536, 540. In its original complaint Watson asked the district court to declare the Harrison County apportionment scheme unconstitutional, enjoin elections under it, and adopt a constitutionally valid reapportionment plan. Equity powers of the court were clearly invoked at that time. Indeed, the Voting Rights Act claim was not added until six months later, after the 1975 amendments to the Act subjected Texas to its requirements.

In the peculiar circumstances of this case, we cannot uphold the court's delaying reapportionment until after the 1980 census.[5] Census forms are being completed now, and it is uncertain how much time will elapse before the necessary data is gathered by the Census Bureau and distributed to the County Court. If an election were held as planned, it would be based on the 1965 reapportionment plan, which all the parties and the Court seem to agree is unconstitutional. Judge Stokes's answer noted the "inequity" of that plan and stated that he tried to revise it because "[a] disparity rather obviously existed between the voting strengths in the four Commissioners Precincts of Harrison County, Texas". A primary election is scheduled for May 3, 1980. Holding it under a plan based on the 1960 census, updated to 1965, would further voting dilution and would subject the people of Harrison County to four more years of government by Commissioners elected un-

der an outdated, inequitable, unconstitutional apportionment plan.

## II.

We therefore direct the court to enjoin the May 3, 1980 primary election of members of the Commissioners Court and to order the County Court to formulate an equitable apportionment plan as speedily as possible. The Commissioners Court should of course solicit the views of the plaintiffs in this case and other interested parties. The district court shall fix an appropriate date for the election following approval of the reapportionment with such modifications as the court may make in the interest of providing Harrison County, Texas, with an equitable and constitutional plan of apportionment.

We REVERSE the district court and REMAND the case to it for action consistent with this opinion.

The mandate shall issue forthwith.

---

5. The Commissioners Court contends that the trial judge's decision is an interlocutory order and hence not appealable. *See* 28 U.S.C. § 1291. But an interlocutory decision "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve injunctions" is appealable. *Id.* § 1292(a)(1). Although the district court's opinion did not men-

tion that plaintiff's request for an injunction, its decision in effect denied the requested relief. *See United States v. Lynd*, 5 Cir. 1962, 301 F.2d 818, 822, *cert. denied*, 1962, 371 U.S. 893, 83 S.Ct. 187, 9 L.Ed.2d 125; *McCoy v. Louisiana State Bd. of Educ.*, 5 Cir. 1964, 332 F.2d 915, 917; 11 C. Wright & A. Miller, Federal Practice and Procedure § 2962 at 614–15.